The petition states, that under the will of Thomas Law Elliot, and on the death of his son and daughter without issue, the petitioner’s former husband Charles Elliot, became entitled together with his sister Mary Rowand to all his real and personal estate; which Bernard Elliot, having intermarried with the daughter, retained (notwithstanding her death) under pretence that the limitation over to Charles Elliot and Mary Rowand was void.
That Bernard Elliot at length relinquished all the real estate to Charles Elliot and Robert Rowand the bus-band of Mary, but retained the personal till his death, in 1778; on which it came into the hands of his executors.
That Charfes Elliot died in 1781, on which his wife the petitioner, became entitled under his will to one half of all his personal estate, after payment of debts and legacies; the, other half he bequeathed to his daughter Jane Riley Elliot, now the wife of Coi Washington,.
*264 MARCH, 1792.
That some time after his death the petitioner intermarried with the. Hon. Richard Beresford, Esq. — but before the marriage executed indentures of lease and release between herself on the one .part, Thomas Ferguson and Roger Parker Saunders on the other, and her intended husband on the third part, by which in order to secure to herself, and to. her sole and separate use, all her estate real and personal, notwithstanding the marriage, she con - veyed to Thomas Ferguson and Roger Parker Saunders their heirs, executors, administrators, and .assigns, all her property of which she was possessed or to which she was in any manner entitled in trust for her till the solemnization of the marriage, and immediately after for the use of her intended husband, during his and her joint lives, and then to the use of hei’self or to snch persons as she should appoint.
That sometime after the marriage was solemnized Charles Elliot’s executors being dead or having renounced, the above mentioned Richai’d Beresford and William Washington obtained administration of his goods with the will annexed, and together with Robert and Mary Rowand, bi’ought their hill against the surviving executors, and son of Bernard Elliot, for an account and delivery over of all Thomas Law Elliot’s real and personal estate: On which it was decreed that the master should report, what pci’sonal pi’operty of Thomas Law Elliot came into Bernard Elliot’s possession, together with the profits that had acci’ued, and what was the value of such as had been lost, and that the defendants should deliver over and account to the complainants in manner as in their bill they prayed, which hath not yet been done.
That the said Richard Beresford the petitioner's present husband, having contracted sundry debts, both before and after the mairiage, some of his «’editors brought their hill alleging that the petitioner’s intex’est in the above mentioned estate was liable to their respective demands; on hearing which bill and the.answer of your petitioner and her husband, it was decreed, that her interest was not liable to their demands, but after the determination of the joint lives of her and her husband, should remain to lies’ *265 entire or her appointees; and that during the joint lives, she should receive a maintenance out of the profits of the estate, (which wore appropriated to pay the creditors during her husband’s life.)
Th at should the above mentioned account and delire-ry over from ilic executors of Bernard Elliot to Richard ISrresibrd, Col. TTashington and Robert Rowand take place, that part of the properly to be delivered over, which the petitioner is entitled to by the will of her former husband Charles Elliot, might, being personal property, be supposed to vest in her present husband, by his: creditors, and therefore to be .subject to his debts, which is contrary to the will, marriage settlement, and several other decrees above-mentioned, and to the rights of your petitioner. That the maintenance ont of the profits of the estate, amounting to only 3001. per annum, and the use of a country house and house servants, is very inadequate to her suitable support, and inconsiderable when compared with the Large estate which she possessed at her marriage, and which with prudent management is capable of producing from two to three thousand pounds a year. She therefore prays, that the said part be settled to her sole and separate use in such manner as the coui't may think most effectual and most conducive to her advantage.
This application by Mrs. Bercsford was opposed by the creditors of her husband, and by those who held bin bonds in which she had united with him.
The cause was argued by Mr. Harper, Gen. Pinck-ney, and Mr. Parker for the petitioner, and by Mr. Pringle, and Messrs. Dcsaussure and Ford for the creditors.
For the petitioner it was contended that on the accession of fortune to a wife, she is entitled to an increase of the provision made for her by settlement. That it was' peculiarly proper in this case, where already a large income arising from the wife’s fortune was carried away to creditors, and a small annual allowance reserved for her maintenance. That the accession of fortune in this case was peculiarly within the reach of the court, as it *266 arose out of a decree of the court itself, and the property still completely under its control. That it could not he said to he reduced to possession by the husband, so as to S‘vc ^1C real ownership by virtue of his marital rights, and therefore could not he subjected by the creditors of Mr. Beresford to the payment of their demands. The counsel cited for the petitioner 1 Eq. Cas. 64. 2 Eq. Cas. 146. 1 Strange 238. 2 Vesey, sen. 79, 91, 561. 2 Atk. 419, 420.—Jewson and Moulson — Also, a case decided in this court of Harlcston us. Hamilton -and wife.
On the part of the creditor it was contended that when the marriage between Mrs. Beresford and her husband took place, a settlement was made of all the estate she then possessed. That this is so secured that the creditors of her husband can get no part of the capital, only the income; and ont of that the court has reserved 3007 per annum for a maintenance: on the death of the husband the rights of the creditors to he paid out of that estate would cease according to the decree, and they wclulcl go unpaid. That here is an accession of fortune, of personal estate since the marriage, not included in the settlement, and to which the marital rights attach. Thai it would be harsh to creditors for this court to interfere, and by ordering a new settlement, to take from them the only chance of payment which they have. The creditors are legally entitled to be paid ont of this property, as soon as the husband reduces it to possession. Will the court interfere and deprive them of the benefit of their legal rights, in a case where the wife already has an ample settlement which protects a large estate, from their claims; the income only, during the husband’s life, being liable to their demands. See 1 Vesey, 539. 1 P. Wms. 382, 458. The court in allowing Mrs. B. 300l. per an-num for her maintenance, out of the income of the estate, which was wholly the husband’s according to the terms of the settlement, went very far indeed in taking from creditors what they were entitled to. It would be too much to deduct still more from the funds from which the creditors have a chance of being paid. Even where there are no debts the court never goes so far as to settle the *267 whole of the wife’s fortune, unless the husband abandons the wife, or uses her cruelly and neglects her. See 2 Atk. 511, 207. Sec 2 Vern. 270. 1 P. Wms. 458. 3 P. Wms. 12. 2 P. Wms. 039.-* The court after deliberation delivered the following decree:
Decree,
This court ever has regarded the claims of creditors with the most favourable eye, and in no instance more so, than the present, for at the time we decreed the estate in question, to be the right of those who claimed under the limitation in the wills of T. L. Elliot, and of Charles Elliott, and were about referring the matter to the master to report a settlement in behalf of Mrs. Beresford, upon its being suggested by some of the gentlemen at the bar that they would wish to be beard on the part of the creditors of Mr. Beresford, against such appropriation of the property; the court without the least hesitation complied with the request, and lyive patiently waited upwards of nine months, for the question to be brought forward; it has now been fully argued and we are called on to decide: It has been contended on the part of petitioners, that the property in question is included in the settlement made prior to Mrs. Bcresford’s marriage with Mr. Beresford, and therefore has been already decided on by this court, in the case, of Bethune and others vs. Beresford and others, and Saunders, and that that settlement 1ms been fully established by this court.
The counsel on the otlier side, insists that it is not included in that settlement, but that it is altogether a new case, totally unconnected with the other, ami must stanjl on its own bottom — But at the same time admits, that a possibility might in equity be assigned. Wo are of the latter opinion, and at the time wc made the decree in the former cause, we were governed by the intrinsic merits of that case, at the same time we did not lose sight of the present case, and whether determined for, or against the interest of Mrs. Beresford, would at a future day be governed accordingly' — that is, to make Mrs. Beresford an additional allowance out of this property if the cause *268 went in her favor; or if otherwise, on a petition for that purpose, to make her some reasonable additional allow-anee out of the trust estate. We will therefore consider the present case, as we did the former, on its own merits, The cases in general, that have been quoted on the present occasion, were also brought under our review in the former cause, but with the addition, of those which now apply to the point of accession of fortune — Wc think it unnecessary to go over the same ground again with regard to the impeachment of marriage .settlements, for the relief of creditors, as we went so fully into that doctrine before — -But with regard to those respecting accession of fortune, and which the husband could not come at without coming into this court, and where we ought or ought not to impose terms on him, or where there are creditors in the case, 'how far the court ought to-- consider it as their duty to relieve them at the expense of the wife, is the question which first presents itself for our consideration. In all cases where the court refuses to make a settlement on the wife out of an accession of property acquired since marriage, and where there are creditors, it has been governed by this principle that an adequate one had already been made or ordered by the court, which would take from creditors their common law rights. The term adequate, is a relative term, and must here have reference to the quantity of the estate brought by the wife. It has been reiterated by the counsel on the part of the creditors, that tliis court has already given Mrs. Bcrcsford such an adequate settlement, and that it would be unreasonable for us now to add to it, at the expense of the creditors. This court has done no such thing; all we did, was to make her some provision out of a settlement made prior to her marriage with Mr. Beresford, the whole of which Mr. Beres-ford’s creditors wanted to possess themselves of; and we were well warranted in what we did, from the invariable .run of authorities, that where creditors came here to seek equity against the husband, their debtor, whose whole possessions were acquired by the marriage, this court basal-ways taken care that they should do equity, by making the wife a reasonable allowance out of her own fortune, as *269 they cannot be placed on a bettor footing, than the bus-band would have been. And what was this allowance? 3001. a year, out of an estate, that was said to be capable of producing between 2000/. and 3000/. per annum. But we will suppose its probable produce not to be more than 1200/. or 1500/. per annum; surely then the allowance by this court was a very moderate one, especially too when it is considered, that it was for the support of both Mrs. and Mr. Beresford, which is hut 150Z. per annum for Mrs. Beresford out of so large an estate as she brought hei* husband on her marriage with him. Under these circumstances, we must next consider how far the claims oi' the creditors to the property now contended for, is such as this court ought to support, and extend to them that relief they pray for. It is first necessary to examine into the nature of this estate, what it originally ivas, and what it now is. It is said that it was a reversionary estate in Mrs. Beresford, and when reduced to a certainty, as it now is, being a personalty, is liable, to the husband’s debts, and this court ought not to interpose its authority to prevent their availing themselves of the right over it which the law gives them. It never was a reversionary estate in Mrs. Beresford, hut rather a contingent limitation in Charles Elliot, but which never had been by hint reduced into possession; on the contrary his right was contested in this court, and as wc believe, that point of law, on which the limitation in ihe will of T. L. Elliot was founded, never had been judicially decided in this country, there were two opinions on it, and each supported by some of the most eminent counsel of that, as well as of the present day, and until this court had decided that question, it could only be called as we have already mentioned a contingent limitation to Charles Elliot — >80. that Mrs. Beresford can be no otherwise considered than as a legatee, claiming under the will of her former husband Charles Elliot. Then without dispute, this court has a right on the husband coming here for his wife’s legacy to impose terms on him, and as the creditors can only stand in his place, the same authority reaches them. The principal question tlxon is, whether, if this is not a *270 property to be considered as included in Mrs. Beresford*» marriage settlement — But as an accession of fortune since the execution of that deed, the court having already ma(^e ^lcr a provision out of the trust estate, this accession ought not now to be left for the benefit of the creditors of Mr. Beresford ? We have already said, we did not think it is included in the marriage settlement, because although a reversion is assignable, yet this not being such an estate in Mi’s. Beresford, was not by the words of that deed vested in the trustees, for to admit that it was, would be rendering that clause by far too comprehensive, as it would sweep into its vortex, every descent, devise, bequest or gift, that would have fallen or have been made to Mrs. Beresford, by her numerous relations and friends. This would he going beyond every allowance that the law admits of. Further, if it is to he considered as included in that deed, the court would take no notice of the present application, as it ought to have been for an increased allowance out of the trust estate. — But the court not considering it as included in that deed, they have turned their thoughts to the merits of the present petition. It might here ha asked, whether there was any probability that the present creditors could have trusted Mr. Beresford on this contingent, litigated interest, that he might possibly become entitled to at some future day — -We can by no means suppose so, when they saw him already in possession of a very large estate, and on which the credit must certainly have been given. It has been further contended on the part of the creditors, that this court ought not to countenance the present application, as the parties had their remedy at law. Why was not this objection made at the hearing of the cause? It would then have been proper, but it certainly is now out of season; the cause has been fully argued, the court has decreed, the objection is therefore inadmissible in this stage of the business^ Mr. Beresford is before the court and properly so, we shall therefore decide on what we think is the true equity of the case; and as we do not consider the former provision made for Mrs. Beresford by this court, to be such an adequate provision proportioned to the estate, she 1m *271 altogether brought her hush and, and which must alwayg govern the decisions on this point, and as this accsssion of fortune will produce an income of no more than 1001. per annum, we think it is to he considered, to be so far from an extravagant, that it is so very moderate an addition to be made to what was formerly allowed her, that the prayer of her petition ought to he granted. Let it therefore be referred to the master to report a proper settlement accordingly.

See the later cases, Mitford vs. Mitford, 9 Vesey, 87. Carr vs. Taylor, 10 Vesey, 574.